UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN RUNYAN,

        Plaintiff,                CIVIL ACTION NO. 08-12091

       v.                          DISTRICT JUDGE ARTHUR J. TARNOW

COMMISSIONER OF           MAGISTRATE JUDGE VIRGINIA MORGAN
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action for judicial review of the defendant's decision denying plaintiff's application for Social Security disability benefits. Plaintiff alleged that she became disabled in September 2004 due to "Behcet's syndrome" with arthritic pain, joint stiffness, frequent infections and problems with her "nerves." The defendant found, after a hearing before an ALJ, that plaintiff was not disabled because she retained the residual functional capacity to perform sedentary work, including her past relevant work. Plaintiff contends that this finding is not supported by substantial evidence. Defendant contends otherwise. For the reasons discussed in this Report it is recommended that the defendant's motion for summary judgment be granted, plaintiff's motion be denied, and decision denying benefits be affirmed.

At the time of the ALJ's decision, plaintiff was 50 years old, with a high school education, and past relevant work as a care giver for the elderly (May 2004 to September 2004) and as a receptionist in a hair salon (August 1998 to August 2001). In addition, she previously owned her own bait and tackle business where she worked as a cashier (1989 to 1998). (Tr. 204) Neither the receptionist job nor her business job as a cashier required lifting of greater than ten pounds. (Tr. 242-243)

The issue before the court is whether to affirm the Commissioner's determination.  In Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989), the court held that:

> Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion.  42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L. Ed. 2d 842 (1971).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L. Ed. 2d 126 (1938).  The scope of our review is limited to an examination of the record only.  We do not review the evidence *de novo*, make credibility determinations nor weigh the evidence.  Reynolds v. Secretary of Health and Human Services, 707 F.2d 927 (5th Cir. 1983).

Brainard, 889 F.2d at 681.

To establish a compensable disability under the Social Security Act, a claimant must demonstrate that he is unable to engage in any substantial gainful activity because he has a medically determinable physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for at least 12 continuous months.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).  If a claimant establishes that he cannot perform his past relevant work, the burden is on the Commissioner to establish that the claimant is not disabled by showing that the claimant has transferable skills which enable him to perform other work in the national economy.  Preslar v. Secretary of HHS, 14 F.3d 1107 (6th Cir. 1994); Kirk v. Secretary of HHS, 667 F.2d 524, 529 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983).

**The ALJ Findings**

The ALJ found that plaintiff has Behcet's syndrome, degenerative disc disease in the lumbosacral spine, colitis, and an adjustment disorder.  Plaintiff reports and the ALJ found that she has a 20 year history of being diagnosed with Behcet's disease.  However, the ALJ found that the actual findings on examination would not prelude sedentary work.  Two consultive

physicians failed to find any ulcerations, eruptions, or exacerbations of the disease. While her range of motion was reduced in spine and some joints, plaintiff still had full use of her hands and legs. The MRI of her lumbar area did not show any disc herniations or nerve root compression. Further, the form showing that plaintiff is disabled due to interstitial cystitis was disregarded as it is cursory and uncorroborated by the medical record. Dr. Bishop concluded that plaintiff would have difficulty with physically demanding jobs but the doctor's residual functional capacity assessment is totally consistent with sedentary work. Although plaintiff is depressed over her illness, she is still well oriented to reality and her thoughts are coherent and organized. Dr. Herringshaw asserted that her mental activities are essentially intact and her GAF score was 60, reflective of only moderate symptoms. (Tr. 82-86)

The vocational expert opined that if plaintiff could sit and stand up to eight hours and lift ten pounds, she could perform a number of receptionist jobs. (Tr. 262) About 45 days after the hearing, a letter from Dr. Stepanski who claimed to have treated plaintiff since 1981 stated that she should not drive due to drowsiness from her medications.

The ALJ found that plaintiff exaggerated her disorder at the hearing based on the findings in the medical records and her claim of an incapacitating degree of fibromyalgia was also inconsistent with the clinical and objective findings. (Tr. 17-18)

**Behcet's Syndrome**

Behcet's disease has been considered by only a handful of courts as a basis for disability. It has been described as "characterized by simultaneously or successively occurring recurrent attacks of genital and oral ulcerations ... often with arthritis; a phase of generalized disorder, occurring more in men than women, with variable manifestations, including dermatitis, erythema nodosum, thrombophlebitis, and cerebral involvement,"quoting Stedman's at 1748. Althen v. Secretary of Dept. of Health and Human Services, 58 Fed.Cl. 270, 274 (Fed.Cl.,2003) Alternatively, Behcet's syndrome has been defined as "a chronic inflammatory disorder

involving the small blood vessels, which is of unknown etiology, and is characterized by recurrent aphthous ulceration of the oral and pharyngeal mucous membranes and the genitalia, skin lesions, severe uveitis, retinal vasculitis and optic atrophy. It frequently also involves the joints, gastrointestinal system and central nervous system." See, Dorland's Illustrated Medical Dictionary, ("Dorland's"), 1631 (27th ed.1988), as quoted in Palmer v. Barnhart, 2005 WL 1712463, 1 (W.D. Va.,2005)

Behcet's syndrome is, according to the Mayo Clinic website, a rare disorder that causes chronic inflammation in blood vessels throughout your body. The inflammation of Behcet's disease leads to a variety of symptoms that may initially seem unrelated. The signs and symptoms of Behcet's disease which may include mouth sores, skin rashes and lesions, and genital sores vary from person to person and may come and go on their own. There is no test to identify the disease but generally genital sores, skin sores, unusual redness after a needle poke or eye issues are required. Treatment aims to reduce the signs and symptoms of Behcet's disease and to prevent serious complications, such as blindness. Behcet's disease may disappear and recur on its own. Body areas most commonly affected by Behcet's disease include: mouth, skin, genitals, eyes, joints, vascular system, digestive system, and brain. In the mouth, painful mouth sores, identical to canker sores, are the most common sign of Behcet's disease. Sores begin as raised, round lesions in the mouth that quickly turn into painful ulcers. The sores heal usually in seven to 21 days, though they do recur. Skin lesions may occur in people with Behcet's disease. Skin problems can vary. Some people may develop acne-like sores on their bodies. Others may develop red, raised and tender nodules on their skin, especially on the lower legs. People with Behcet's disease may develop sores on their genitals. The sores most commonly occur on the scrotum or the vulva. Sores appear as round, red and ulcerated lesions. The genital sores are usually painful and may leave scars.         Behcet's disease may also cause inflammation in the eye, a condition called uveitis. In people with Behcet's disease, uveitis causes redness, pain and

blurred vision in one or both eyes and may come and go.  Inflammation that occurs in the blood vessels of the retina is a serious complication of the disorder.  Joint swelling and pain most commonly affect the knee in people with Behcet's disease.  The ankle, elbow or wrist also may be involved. Signs and symptoms may last one to three weeks and go away on their own. Inflammation in veins and large arteries may occur in Behcet's disease, causing redness, pain and swelling in the arms or legs and could result in a blood clot.  In fact, many of the signs and symptoms of Behcet's are believed to be caused by inflammation of the blood vessels (vasculitis).  These signs and symptoms may come and go, and they may move from one limb to another.  Inflammation in the large arteries can lead to complications such as aneurysms and narrowing or blockage of the vessel.  In the digestive system, there may be abdominal pain, diarrhea or bleeding.  Behcet's disease may cause inflammation in the brain and nervous system that leads to headache, fever, disorientation, poor balance or stroke.

Physicians don't know what causes Behcet's disease.  Many believe Behcet's disease is an autoimmune disorder in which the body's defense system, the immune system, turns on itself. Rather than attack foreign invaders, such as bacteria and viruses, the immune system attacks healthy cells in the body.  Behcet's disease is likely caused by a combination of genetic and environmental factors.  Some researchers believe a virus or bacterium may trigger Behcet's disease in people who have a certain genetic background.  Other possible triggers that could set off the immune system could include chemicals or heavy metals.

Plaintiff alleges that she suffers from disabling fibromyalgia, diagnosed shortly before the hearing.  Fibromyalgia is pain in the fibrous tissues, muscles, tendons, ligaments, and other white connective tissues, frequently affecting the low back, neck, shoulders, and thighs.  See, The Merck Manual (16th Ed. 1992) pp. 1369.  In the earlier edition, fibromyalgia was categorized as "nonarticular rheumatism."  (Merck Manual, 15th Ed. p. 1271)  The manual noted that various locations of the pain may occur and when they occur together they are referred to as

muscular rheumatism.  Those of the low back (lumbago), the neck (neck spasm), shoulders, thorax (pleurodynia), and thighs (aches and "charley horses") are especially affected.  There is no specific histological abnormality.  Kocsis v. Multi-Care Management,  97 F.3d 876, 879, n. 2.  The term fibromyalgia has often been interchangeably used with the terms fibromyositis or fibrositis.  See Lisa v. Secretary of Health and Human Services, 940 F.2d 40, 43 (2d Cir. 1991).  However, the absence of cellular inflammation justifies the preferred terminology of fibromyalgia rather than the older terms of fibrositis or fibromyositis.  Kocsis v. Multi-Care Management, 97 F.3d 876, 878 n.2 (6th Cir. 1996).  Fibromyalgia is not *per se* disabling.  Preston v. Secretary of Health and Human Services, 854 F.2d 815 (6th Cir. 1988).  The Seventh Circuit, noting that the symptoms are entirely subjective, has stated that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working but most do not, and the question is whether [plaintiff] is one of the minority."  Sarchet v. Chater, 78 F.3d 305, 306-7 (7th Cir. 1996).

**Plaintiff's Condition**

According to her submissions, plaintiff treats with Dr. McIntosh for her Behcet's and has been diagnosed with fibromyalgia.  She is on several medications.  (Tr. 81)  Plaintiff reported that her activities included washing dishes, talking on the phone, visiting her mother once a week, simple cooking, laundry, grocery shopping and light housework.  (Tr. 66-70)  Plaintiff testified that she stopped working as a care giver in 2004 due to her frequent bladder and kidney infections and arthritic pain in her hands.  (Tr. 241)  She reported pain and difficulty bending and stooping and needed to change positions frequently.  (Tr. 71, 78)  The kidney infections result in ulcers in her mouth and frequent vomiting.  These occur every 6 to 8 weeks and are about a week or two in duration.  (Tr. 244-245)  She would generally stay in bed during the course of the infection.  She also reported back pain and blurry vision.  (Tr. 254)  Her medication made her sleepy and gives her diarrhea.  (Tr. 244-246)

Medical records show that plaintiff was seen at Pontiac Osteopathic Hospital in February, 2004. She listed her occupation as homemaker. (Tr. 111) She underwent a CT scan of her abdomen in February, 2004, which showed a previous hysterectomy and minimal calcification of the abdominal aorta, but was otherwise unremarkable. Her CT scan of the pelvis was also unremarkable. (Tr. 113) In January 2004 she complained of bladder pressure. In February 2004 she complained of flank pain. (Tr. 128, 152) In March 2004 plaintiff reported some mouth and vaginal ulcers. She had no ocular disturbances and no arthropathy. (Tr. 126)

In June 2004 plaintiff was seen by Dr. Duncan for her Behcet's. She complained of oral and vaginal ulcer and requested to be re-started on estrogen which she noted was helpful in the past to control her symptoms. At the time of examination, she had no sores, no canker sores, no ocular problems, and no neurological problems. The Behcet's was stable. Estrogen was re-started. (Tr. 123-125) In September, 2004, she was seen by Dr. Duncan on a referral from Dr. Craften. Plaintiff reported that she had not experienced any outbreaks while on the estrogen patch. She had no need for any immunosuppressant drugs. No evidence of any Behcet's activity other than the pathergy (blister after needle prick) was seen. Her prescriptions were renewed. (Tr. 120) In September, 2004, a lower back/abdominal ultrasound was negative. (Tr. 196) In December 2004 she was on an estrogen patch and lately reported frequent upset stomach. Her Bechet's was reported to be stable. (Tr. 118-119) In April, 2005, she complained of chronic low back pain, pain in her hands, and in her hip. (Tr. 116) In June 2005 her MRI of the lumbar spine was negative. (Tr. 187)

In August, 2005, plaintiff was seen for an initial consultation by Dr. Dawn Tartaglione for her low back pain and leg numbness. Nose, sinus, throat and mouth review were negative. (Tr. 180) She had no abdominal pain or bowl problems. *Id*. Plaintiff denied any skin problems and exam was negative. Vascular review of symptoms was also negative. (Tr. 180-181) Neurological exam was negative. (Tr. 182) A 24 Holter heart monitor in August 2005 showed

no problems. (Tr. 183) In September, 2005, she went to physical therapy for her back pain. Work capacity and range of motion were increased with the therapy. (Tr. 178)

In November 2005 plaintiff complained of chronic left hip pain to Dr. Barbara McIntosh. Plaintiff was given an injection and referred to an orthopedist. (Tr. 158) Previously she was complaining of low back pain and had been receiving Vicodin. That was changed to Norco in August, 2005. (Tr. 160) In February 2006 Dr. Coccimiglio reports to Dr. Crafton that plaintiff, who complained of a urinary tract infection, has on the CT scan, a small stone in the left kidney with no evidence of any ureteral calculi. Additional tests were performed and scheduled but there was no medical showing in evidence of a basis for the bladder pressure. (Tr. 147, 149, 150) She was given antibiotics.

In March 2006 Dr. McIntosh reports that plaintiff has Behcet's syndrome and fibromyalgia. (Tr. 155) Both had been stable and there were no tender points of fibromyalgia on examination. She has a new diagnosis of irritable bowel syndrome and chronic mechanical lower back pain. (Tr. 155) Her colonoscopy of July, 2006 was unremarkable. (Tr. 163)

In August, 2006, Dr. Crafton reports on a form that plaintiff's fibromyalgia results in moderate symptoms but that she can do no lifting, sitting, standing, or working. (Tr. 167) She underwent a consultive examination in February 2007 with Dr. Bishop. There were no oral ulcerations, no active arthritis, but restricted range of motion. She complained of blurry vision but visual acuity was 20/30 and otherwise unremarkable on examination. (Tr. 218-222) In August 2007, a Dr. James Stepanski of Waterford writes that plaintiff had been a patient since 1981 and her medical history is well known. No reference is made to any diagnosis of Behcet's. He states, without reference to tests or treatment, that she has fibromyalgia, cystitis and insomnia. She should not drive due to her medications. (Tr. 229) Dr. McIntosh reports as follows: "She is taking a medication that can cause excessive drowsiness." (Tr. 230)

**Analysis**

Plaintiff argues that the treating physician's testimony was not given the appropriate weight. It is true that great deference is to be given to medical opinions and diagnoses of treating physicians. Harris v. Heckler, 756 F.2d 431 (6th Cir. 1985). It is also true that complete deference is given when said opinions are uncontradicted. However, in both instances, the opinion of the treating physician must be based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984); Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Where the doctor's physical capacity evaluation contains no substantiating medical opinions and is inconsistent with the doctor's previous opinions, the defendant is not required to credit such opinions. Villarreal v. HHS, 818 F.2d 461, 463 (6th Cir. 1987). The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician. Warner v. Commissioner of Social Security, 375 F.3d 387 (2004) (citing Harris v. Heckler, 756 F.2d at 435). Here, it was not error for the defendant to give little weight to the opinion of the treating physicians. No objective evidence was offered in support of the disabling condition. While plaintiff does appear to take a variety of medication, there is nothing in the records to support the conclusions of Dr. McIntosh, who does not actually opine that plaintiff has drowsiness, only that she is taking medications which can cause drowsiness. In addition, while Dr. Stepanski indicates that he has treated her for 25 years, none of his notes are contained in the medical records and it does not appear that he was part of her care or treatment.

Plaintiff claims the ALJ did not properly evaluate her complaints of disabling pain. The ALJ found they were not credible. Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. Houston v. Secretary of HHS, 736 F.2d 365, 367 (6th Cir. 1984). Therefore, a determination of disability based on pain depends largely on the credibility of the plaintiff. Houston, 736 F.2d at 367; Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997); Villarreal v. Secretary of HHS, 818 F.2d 461, 463

(6th Cir. 1987).  Because determinations of credibility are peculiarly within the province of the ALJ, those conclusions should not be discarded lightly.  Villarreal, 818 F.2d at 463 and 464.

In Duncan v. Secretary of HHS, 801 F.2d 847 (6th Cir. 1986), this circuit modified its previous holdings that subjective complaints of pain may support a claim of disability. Subsequently, the Social Security Act was modified to incorporate the standard.  20 C.F.R. § 404.1529 (1995).  A finding of disability cannot be based solely on subjective allegations of pain.  There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.  Jones v. Secretary of HHS, 945 F.2d 1365, 1369 (6th Cir. 1991). No objective evidence supports the diagnosis and no evidence supports the disabling nature of the plaintiff's condition.  Both Behcet's and fibromyalgia are not susceptible of easy diagnoses.  However, assuming the diagnoses of both are correct, plaintiff has still failed to show that they are so severe to result in an inability to perform sedentary work.  All the objective testing has been negative.  Mouth and other sores were absent at the time of the consulting examination. She denied pain and other problems to Dr. Dawn Tartaglione   No one at physical therapy noted her inability to exercise due to pain from the symptoms of fibromyalgia or Behcet's, and it was reported that the exercises improved her lower back pain and increased her range of motion.  No ocular problems have been observed.  Plaintiff has failed to demonstrate that she is disabled from sedentary work, including her past relevant work.

The ALJ's finding that plaintiff exaggerated her symptoms and functional limitations is consistent with the medical records.

**Conclusion**

Accordingly, it is recommended that the defendant's motion for summary judgment be granted, that of the plaintiff denied, and the decision denying benefits be affirmed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Virginia M. Morgan
Virginia M. Morgan
United States Magistrate Judge

Dated: January 8, 2009

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System and/or U. S. Mail on January 8, 2009.

s/Jane Johnson
Case Manager to
Magistrate Judge Virginia M. Morgan